**23-1659**

IN THE

# United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

_____

JAMES NAPIER,

*Plaintiff-Appellant,*

—v.—

ORCHARD SCHOOL FOUNDATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana
No. 1:19-cv-03556-SEB-MKK

Honorable Sarah Evans Barker, District Judge

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Richard L. Darst
Cohen Garelick & Glazier
*Counsel of Record*
*Attorneys for Plaintiff-Appellant*
8888 Keystone Crossing Boulevard
Suite 800
Indianapolis, Indiana 46240-4636
Telephone (317) 573-8888
Facsimile (317) 574-3855
Email rdarst@cgglawfirm.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

I.    The order granting summary judgment is in error in deciding issues of fact on the sufficiency of the multiple types of the direct and circumstantial evidence for a jury to find sex discrimination as a cause of Orchard's termination of a male, Mr. Napier, on March 6, 2019, including the following types of evidence:

(1) background circumstances of Orchard's multiple statements against males and favoring females; (2) Orchard has an Elementary School (ES), a Middle School (MS), and no high school; (3) an industry stereotype against males in early childhood schools; (4) Orchard's debate whether or not to hire Napier because he is a male; (5) Mr. Napier's exemplary performance; (6) Orchard's glowing appraisal of him; (7) Orchard's termination of the male Head of School (HOS); (8) Orchard's statements against males and about "the legality of that position;" (9) Orchard hired a female HOS, Dr. Helvie, who said she concentrated in women's studies and followed the philosophy of a radical feminist; (10) two weeks after beginning at Orchard, Dr. Helvie demoted from the four-person senior leadership team the two male directors of Orchard's only schools and replaced the males with two females who did not supervise any teachers; (11) Dr. Helvie immediately told Mr. Napier not to communicate with her directly but to communicate with her through the Assistant HOS (AHOS), Mr. Eble; (12) Dr. Helvie did not regularly communicate directly with Mr. Napier and Mr. Eble and she made them afraid to ask her questions; (13) Mr. Napier and the MS Coordinator, Ms. Brothers, had been working on her job description since June 2018 and it was not confidential; (14) Dr. Helvie requested Mr. Napier to give her a new job description that reflected his priorities for the coordinator role, and she did not request confidentiality; (15) Mr. Napier did not disclose to Ms. Brothers his new job description that reflected his priorities for the coordinator role; (16) Ms. Brothers did not have the job description with Mr. Napier's priorities and she only had the old job description; (17) Dr. Helvie gave Mr. Napier a high recommendation for a HOS position at another private school; (18) Dr. Helvie disclosed to Ms. Brothers the proposed plan of Dr. Helvie to demote Ms. Brothers to a teaching

position, Ms. Brothers became stressed and was observed crying at the school, and Ms. Brothers disclosed to ES Coordinator Gretchen Bricker the statements of Dr. Helvie, which stressed Bricker as well; (19) Direct and ambiguous statements in which Dr. Helvie tried to blame Mr. Napier for disclosing Dr. Helvie's plan, but Mr. Napier did not disclose her plan, Dr. Helvie disclosed her plan; (20) Dr. Helvie told Mr. Napier in March that he was terminated as of the end of the school year, and she failed to give him a notice of an accusation against him and an opportunity to respond before terminating him; (21) Orchard failed to offer a specific reason for the termination; (22) Dr. Helvie's termination of Mr. Napier for a non-specific false reason of a breach of a non-existent and non-specific instruction of confidentiality; (23) Dr. Helvie's immediate mass email to all faculty and staff that Mr. Napier would not be reemployed three months later at the end of the school year, humiliating him, making him a lame duck in his job, and ruining his opportunities for leadership employment; (24) Dr. Helvie's immediate announcement of the promotion in March effective at the end of the school year to the position of Director of the MS of the female coordinator, Ms. Brothers, whom Dr. Helvie had said she was considering demoting to teaching, who was observed crying in the school, and who disclosed to the ES Coordinator Ms. Bricker the statements of Dr. Helvie that caused the stress; (25) suspicious timing; (26) Mr. Napier's complaints of discrimination (27) the failure of Dr. Helvie to investigate Mr. Napier's complaints and her failure to correct the discrimination; (28) the failure of Orchard's board to investigate Mr. Napier's complaints of discrimination and failure to correct the discrimination; (29) Dr. Helvie's and Orchard's failure to investigate the complaints of the many faculty and parents who supported Mr. Napier; (30) Orchard's failing to give Mr. Napier any writeup, counseling, discipline, or any other action that it gave to female employees except the one female whom it terminated for theft; (31) Orchard's failure to give Mr. Napier an Employee Termination Notice that it gave to other involuntarily terminated employees; (32) Orchard's failure to follow its training on preventing and correcting discrimination for Mr. Napier; (33) Orchard's deviations from its policies; (34) the resignation of the male ES Director at the end of the following academic year without any other claimed employment and Orchard replacing him with a female teacher with lower qualifications; (35) Orchard's promotion and hiring of all female leaders for two years, 2020-2021; (36) all of the above evidence showing the pretext of the defendants' non-specific, false, and inadequate reason for the termination; (37) and all of the above evidence showing a causal link between Mr. Napier's gender and his termination. . . . . . . . 10

II. The order granting summary judgment is in error in deciding issues of fact on the sufficiency of the multiple types of the direct and circumstantial evidence for a jury to find sex discrimination and retaliation as a cause of Orchard's failure to interview or hire Mr. Napier

in January 2020, including the following types of evidence:

(1) all of the above evidence described in Issue No. I; (2) all of the background evidence of Orchard's statements and actions against males and favoring females; (3) Mr. Napier's exemplary performance; (4) Mr. Napier's complaints of discrimination, complaints from the faculty, parents and comments in the school association's report supporting Mr. Napier; (5) Orchard's failure to investigate the complaints; (6) Orchard's deviation from its regular procedures; (7) suspicious timing; (8) Orchard's failure to have a policy against retaliation; (9) direct and ambiguous statements and conduct of Orchard; (10) Orchard's better treatment of females and persons who had not complained; (11) Orchard's interview and hiring of Ms. Brothers who had wanted to remain as coordinator, who had wanted Mr. Napier to be director, who had cried at school when Dr. Helvie told her that Dr. Helvie was considering demoting her to teaching, who had disclosed to ES Coordinator Bricker the statements of Dr. Helvie, who was less qualified, and who had no supervisory experience other than as acting director after Dr. Helvie in March immediately without any applications appointed her as acting director; (12) Orchard's failure to offer a specific non-discriminatory reason for its failure to interview or hire Mr. Napier; (13) Orchard's offer of the non-specific, shifting, false, and contradictory reason of past poor performance; (14) Orchard's attempt to cover up its discrimination and retaliation by arguing as Orchard's comparator an unidentified female employee without producing or offering any personnel file, application, documents, or facts relating to the alleged female; (15) all of the above evidence showing the pretext of the defendants' nonspecific, shifting, false, and inadequate reason; (16) and all of the above evidence showing a causal link to the failure to interview and hire him. . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CIRCUIT RULE 32 CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

## <u>TABLE OF AUTHORITIES</u>

<u>**Decisions**</u>                                                                                     <u>**Page**</u>

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . .14

*Debs v. Ne. Illinois Univ.*, 153 F.3d 390 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 22

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Duncan v. Fleetwood Motor Homes of Indiana, Inc.,* 518 F.3d 486 (7th Cir.2008) 18

*EEOC v. Target Corp.*, 460 F.3d 946 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . 19

*Harrow v. Department of Defense*, 2024 WL 2193874. _ S.Ct. _ (2024) . . . . . . . . 22

*Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948 (7th Cir. 2021) . . . . . 24

*Malin v. Hospira, Inc.*, 762 F.3d 552 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 13

*Muldrow v. City of St. Louis, Missouri*, 144 S.Ct. 967 (2024) . . . . . . . . . . . . . . . . 21

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . 2

*Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760 (7th Cir. 2016) . . . . . . . . . . . . . . 23

*Peirick v. Indiana University-Purdue University Indianapolis*, 510 F.3d 681
(7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) . . . . . . . . . . . . . . . . . . . 14

*Pryor v. Seyfarth, Shaw, Fairweather & Geraldson,* 212 F.3d 976 (7th Cir. 2000) . 14

*Simple v. Walgreen Co.,* 511 F.3d 668 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 19

*Smith v. Spizzirri*, 2024 WL 2193872, _ S.Ct. _ (2024) . . . . . . . . . . . . . . . . . . . . . . 23

*Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285 (7th Cir. 1999) . . . . . . . . . . . . . . . . 14

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*,
600 U.S. 181 (2023) (SFFA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Twisdale v. Snow*, 325 F.3d 950 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Vichio v. US Foods, Inc.*, 88 F.4th 687 (7th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . .14

*Ziccarelli v. Dart*, 35 F.4th 1079 (7th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **Rules**

Rule 32, Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Rule 32, Rules of the Seventh Circuit Court of Appeals . . . . . . . . . . . . . . . . . . . . . . 26

No. 23-1659

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
_____

| | | |
|---|---|---|
| JAMES NAPIER, | ) | Appeal from the |
| | ) | United States District Court |
| Plaintiff-Appellant, | ) | Southern District of Indiana |
| | ) | Indianapolis Division |
| v. | ) | |
| | ) | Case No. 1:19-cv-03556-SEB-MKK |
| ORCHARD SCHOOL FOUNDATION, | ) | |
| | ) | Hon. Sarah Evans Barker, |
| Defendant-Appellee. | ) | District Judge |

_____

**REPLY BRIEF OF PLAINTIFF-APPELLANT**
_____

STATEMENT REGARDING ORAL ARGUMENT

The Brief of Defendant-Appellee Orchard School Foundation (Orchard) contains a generic suggestion that oral argument is not needed, but the Brief of Orchard ignores evidence, ignores genuine issues of material fact, and ignores arguments. Orchard's failures provide even more reasons for oral argument and consideration of the totality of the evidence.

STATEMENT OF THE CASE

**Orchard ignores the considerable background circumstances.**

Orchard's Statement of the Case ignores the considerable background statements and actions of Orchard against males. [A-3-6]. Orchard makes the conclusory statement that the background statements and actions are "not relevant." [Br. Orchard, p. 2:7-10]. But the Argument in the Brief of Orchard later

makes the contrary conclusory argument that the background circumstances are not only relevant, Orchard also argues that the background circumstances are required. [Br. Orchard, pp. 13:21-16:11, 32:1-12].

Background circumstances are relevant. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112-113 (2002). But background circumstances are not required, as explained for the several reasons in the Brief of Appellant, pages 27-30.

**Orchard's Brief admits that Dr. Helvie did not give Mr. Napier the same level of strategy discussions that he had earlier.**

Orchard's Brief at page 3, lines 15-18, states: "While he—as part of the Academic Leadership Team—continued to meet with Dr. Helvie about every two weeks, those meetings did not include the same level of strategy discussions that had occurred earlier."

**Orchard's Brief states that Dr. Helvie instructed Mr. Napier not to post a vacant position for applications, but Orchard's statement is contrary to the evidence.**

Dr. Helvie did not testify in her affidavit to any instruction not to post a vacant position for applications. [Dkt. 104-12]. Orchard's Brief at page 4:2-8 cites only the beginning five lines of Mr. Napier's explanation of Dr. Helvie's instruction and ignores Mr. Napier's explanation that he did not see her instruction not to hire a person as an instruction not to make the posting of the vacant position because the posting is not the hiring. [Dkt. 104-2, p. 16 (Napier Dep. 64:14-25].

Orchard's Brief also ignores Orchard's question and Mr. Napier's answer that "there was no explicit instruction to you that we should not be posting this position." [Dkt. 104-2, p. 17, (Napier Dep. 65:20-66:3]. Both Orchard and Mr. Napier understood that there was no explicit instruction to Mr. Napier that they should not

be posting this position. *Id.*

Orchard's Brief also ignores the testimony that Mr. Napier's supervisor, Nick Eble, was aware that Mr. Napier was making the posting, and it really ruffled no feathers until it had to be taken down. *Id.* The evidence shows that Dr. Helvie did not instruct Mr. Napier or Mr. Eble not to post the position. If there is any issue about what Dr. Helvie told Mr. Napier, it is an issue of fact for the jury, not for summary judgment.

**Orchard's Brief does not claim that Dr. Helvie gave Mr. Napier any specific instruction of the confidentiality of the new job description of Middle School Coordinator Angela Brothers.**

Orchard's Brief at pages 4:9-5:3 ignores Orchard's question to Mr. Napier and his answer that Dr. Helvie did not tell him not to talk with Angie Brothers about looking at her job position, because it would have been water under the bridge, since he had been talking to her about her job description since June of 2018. [Dkt. 104-2, p. 21 (Napier Dep. 84:12-18)].

Instead, Orchard's Brief at pages 4:18-5:3 cites the later page 90:6-12 of Mr. Napier's deposition, lines 6 to 12, but again, Orchard's Brief ignores the fact that Orchard asked: "Did Dr. Helvie ever imply that she wanted the creation of this new job description to be kept confidential." [Dkt. 104-2, p. 23 (Napier Dep. 90:6-12)]. Orchard's Brief also ignores lines 13 to 18 that follow Orchard's citation that explain again that it would have been water under the bridge and not confidential, because they had been talking about the job description for six or seven months.

After ignoring the important parts of Mr. Napier's testimony, Orchard's Brief at pages 4:22-5:3 cites Dr. Helvie's vague conclusory affidavit statement that: "I

explicitly instructed Jamie Napier and Hal Schwartz that the development of the Coordinator job description was to be completed confidentially." [Dkt. 104-12, p. 2 (Helvie Aff. ¶ 7)]. But Dr. Helvie offers no evidence of any explicit instruction. Her affidavit provides no date, time, place, who was present, circumstances, or what words she wanted to claim she said to Mr. Napier. *Id*. Her affidavit does not contain any specific instruction to Mr. Napier about what to do.

Orchard's Brief at page 4:2-3 also cites a vague conclusory affidavit statement of Hal Schwartz that is even more vague and uses different words as follows: "Dr. Helvie stated that the task should be completed confidentially." [Dkt. 104-13 (Schwartz Aff. ¶ 6)]. His affidavit also failed to allege any date, time, place, who was present, circumstances, what words were used, and what the words meant that was to be confidential. Mr. Schwartz had a motive to sign a conclusory affidavit, because he had been afraid that he would be dismissed because he is a male. [Dkt. 117-1, ¶¶ 191-192]. The following year, he suddenly resigned. [A-80, ¶ 64].

The evidence shows that Dr. Helvie did not give Mr. Napier any specific instruction about the confidentiality of the new job description. Dr. Helvie does not have a good reputation for truthfulness. [A-80, ¶¶ 42-47].

The evidence also shows that Mr. Napier did not disclose his new job description for the coordinator position to Ms. Brothers. [A-44; A-47-53].

Any issue about the existence of an instruction, the content of any instruction, what was said to whom, when, where, in the presence of whom, and the circumstances, are genuine issues of material fact for the jury, not for summary judgment.

4

**Orchard's Brief implies that Mr. Napier caused Ms. Brothers to become concerned about whether her job was in jeopardy, but it was Dr. Helvie, not Mr. Napier, who caused Ms. Brothers to become concerned.**

Dr. Helvie formed a faculty council that told Ms. Brothers that she was not qualified for her job and gave Ms. Brothers the sense that her job was illegal. [Dkt. 104-2, pp. 20-21 (Napier Dep. 77:9-84:18]. At the Winter Term class, Dr. Helvie failed to appear and help Ms. Brothers, as Dr. Helvie had told Ms. Brothers that Dr. Helvie would do. *Id.* Dr. Helvie failed to tell Ms. Brothers why Dr. Helvie did not help Ms. Brothers teach Winter Term, Dr. Helvie failed to communicate with Ms. Brothers, and Dr. Helvie ghosted Ms. Brothers. *Id.* Dr. Helvie hired Butler University consultants to interview the two consultants, Ms. Brothers and Ms. Bricker, about their job duties, and Ms. Brothers was very worried by the Butler consultants. *Id.*

Mr. Napier and Ms. Brothers had been working on her job description duties since June 2018 and they were still working on them in the Spring of 2019. Mr. Napier and Ms. Brothers were working on her description in order to help Ms. Brothers keep her job as coordinator. *Id.* Dr. Helvie caused Ms. Brothers stress, not Mr. Napier, who was helping her keep her job as coordinator. [*Id.*; A-47].

Because Dr. Helvie caused Ms. Brothers to be concerned about whether her job was in jeopardy, she asked Mr. Napier, and Mr. Napier did not disclose any confidential information. He merely said "maybe possibly," which was already known to the faculty council, to Ms. Brothers, to the Butler University consultants, and to the Orchard employees interviewed discussing her job. Mr. Napier refused to answer her question, other than "maybe possibly," which everyone at Orchard

5

knew. He did not answer one way or the other. He did not disclose any confidential information. Mr. Napier did not even know what Dr. Helvie had decided.

Orchard's Brief at page 5:18-20 argues that on February 20, Dr. Helvie "confirmed with Ms. Brothers that she was reviewing all administrative roles in the school, including Ms. Brothers'." That statement is not accurate. Dr. Helvie's email dated two days later on February 22, 2018 confessed to the two female board co-chairs that Dr. Helvie told Ms. Brothers that Dr. Helvie planned to demote Ms. Brothers to a teaching position, causing Ms. Brothers to cry in the school. Dr. Helvie did not tell Ms. Brothers about any confidentiality, and Dr. Helvie caused Ms. Brothers to tell Ms. Bricker of Dr. Helvie's plan of demotion. [A-45-46]. Dr. Helvie tried to blame Mr. Napier when she had not given any explicit instruction on confidentiality, and when he did not disclose anything confidential. It was Dr. Helvie who told Ms. Bricker about her plan, not Mr. Napier. Dr. Helvie was not truthful in her conclusory statements about unspecified "breach of confidentiality of our Academic Leadership Team conversations," and "egregiously compromised my trust in him." [A-46]. Dr. Helvie was not truthful in her later conclusory statement in her affidavit that she "explicitly instructed Jamie Napier and Hal Schwartz that the development of the Coordinator job description was to be completely confidential." [Dkt. 104-12, ¶ 7; A-43]. She did not allege any facts and she did not even allege her previous vague conclusory statement about unspecified "Academic Leadership Team conversations." *Id.*

Orchard's Brief admits at page 6 that Mr. Napier's supervisor, Nick Eble, Assistant Head of School had no role in the decision to terminate Mr. Napier. Dr.

Helvie did not ask him for information about his subordinate Mr. Napier, and Dr. Helvie did not give him any specific reason for her termination of his subordinate. [A-80-81].

Orchard's Brief at pages 6-7 admits that Dr. Helvie immediately offered to Ms. Brothers, whom Dr. Helvie planned to demote to teaching, Mr. Napier's job of Middle School Director. Dr. Helvie's actions were a scandal and Mr. Napier did not want the school to dissolve itself if Ms. Brothers did not accept his job. *Id.* Ms. Brothers was not qualified to be a director, but if Mr. Napier was not there as director, the school would dissolve itself if Ms. Brothers did not accept the job. [Dkt. 104-2, pp. 27-28 (Napier Dep. 107:17-111:6].

**The facts showed Napier's complaints of discrimination were as a male.**

Orchard's Brief at page 7 argues that Mr. Napier's letter of complaint dated March 15, 2019 did not include the word "male," but the facts show that Orchard knew the issue was discrimination against him as a male, because Orchard had been making statements against him as a male and against other males for years and had written about the issue of the "legality" of their statements and actions against males. [A-3:20-6:10, esp. A-5:14]. Mr. Napier went further and complained to Dr. Helvie on March 7, 2019 that his termination was a "pretext for denial of equal treatment." [Dkt. 117-19, p. 2].

On April 15, 2019, Orchard's H.R. Coordinator wrote that Orchard had been served with the EEOC charge of Mr. Napier. [Dkt. 117-29, p. 1]. On June 7, 2019, after his EEOC charge, Mr. Napier again wrote to Orchard about the years of Orchard's statements against males as "evidence of sex discrimination," and he

again requested an opportunity to meet and seek a mutually agreeable outcome instead of pursuing litigation. [Dkt. 117-25, p. 6].

**Orchard failed to investigate and correct discrimination and ridiculed it.**

Orchard conducted no investigation of his complaints of discrimination, and instead, on June 17, 2019, Orchard again refused to meet with him. [Dkt. 117-25, p. 9]. Orchard again told him "to raise them with Dr. Helvie." *Id.* Dr. Helvie had refused to respond to his complaints. The Order of Summary Judgment told him that comparing Orchard's treatment of him to Orchard's treatment of her was "silly since, clearly, Dr. Helvie did not (and would not) fire herself for any discrimination she might have committed against him." [A-31:7-8]. It was Dr. Helvie and the board who refused to investigate his complaints and refused to correct the discrimination. Contrary to the Order, the law actually expects CEOs and boards to investigate and correct discrimination, and if they fail to do so, it is more evidence of discrimination and retaliation. Their failure to investigate and correct discrimination creates more problems for the employees, the employer, the EEOC and the courts.

**Dr. Helvie gave Orchard and Mr. Napier a humiliating false reason.**

Dr. Helvie made serious false statements in her coverup email to the board of breach of confidentiality and that Mr. Napier "egregiously compromised my trust in him." [A-46]. Dr. Helvie made the serious false statements in order to try to discourage Mr. Napier from complaining.

Orchard has publicly repeated such extreme, conclusory, false statements against Mr. Napier in its briefs. Dr. Helvie did not make those false statements to Mr. Napier's supervisor Mr. Eble. [A-81]. If there had been any truth in her

statements against Mr. Napier, Dr. Helvie would have asked his supervisor about them and would have told his supervisor about them, but she did not tell him.

Mr. Napier complained that Dr. Helvie's statement that the reason for his termination was "nothing criminal or illegal" represents a "hostile insinuation" that the reason for his termination was serious but not criminal or illegal. [Dkt. 117-25, p. 8]. Dr. Helvie's statement "I do not want a single person leaving this room thinking disparaging things about Jamie Napier" is contrary to her extreme, conclusory, false statements that she made to the board and to Mr. Napier.

Dr. Helvie made the false statements of breach of confidentiality and egregious breach of trust to the board and to Mr. Napier to attempt to justify the worse treatment of him than of female employees like Ms. Brothers, Ms. Bricker, and other female employees who were given counseling or actions less than termination. He then had to explain to his family, friends, and prospective employers, that Dr. Helvie's statements were untrue, which again placed him in a negative light. When Dr. Helvie and Orchard failed to investigate and correct the discrimination, Mr. Napier had to complain to the court, and Orchard repeated the false statements against him on the public record.

**Dr. Helvie treated Ms. Bricker better than Mr. Napier.**

Orchard's Brief at page 8 admits that it was Dr. Helvie who told Ms. Bricker that Dr. Helvie was demoting her to a teaching position, but Orchard ignores the facts that Ms. Bricker complained publicly about the demotion on her Facebook posting, that Dr. Helvie had to ask her to take the posting down, and that Dr. Helvie allowed her to take leave and Dr. Helvie still offered Ms. Bricker

employment as a teacher instead of terminating her. [A-79-80; Dkt. 117-40, pp. 2-3].

**Orchard's offered pretext excuse for retaliation.**

Orchard's Brief at page 8:19-22 claims the only reason that Mr. Eble did not allow Orchard to interview Mr. Napier was that Dr. Helvie had previously decided that Mr. Napier 's "continued relationship would not be conducive to the school's future." That general conclusory statement is not a legitimate specific independent reason, because it is consistent with Orchard's sex discrimination by its many statements and actions against the male employees. Orchard argues that Mr. Eble "inferred that perhaps there had been a breach of trust," but Dr. Helvie not trusting males enough to give them information is proof of sex discrimination. Mr. Eble's inference did not show any facts for "poor past performance" or any reason not to interview Mr. Napier for his explanations of the facts, especially in view of the support of him from faculty, parents, ISACS comments, and when Orchard had failed to follow its policies and had failed to conduct any investigation.

Orchard's Brief also continues to attempt to cover up its actions by continuing to argue to the Court that Mr. Eble rejected "another former (female) employee's" application, when Orchard did not identify any such female, did not produce any evidence for any such female, and did not make any such claim until after discovery in Mr. Eble's after-the-fact conclusory affidavit. [A-82].

## ARGUMENT

**Orchard's Brief ignores the evidence of discrimination.**

Orchard's Brief at pages 9:20-10:2 falsely claims that it is undisputed that shortly after her tenure as Head of School began, Dr. Helvie instructed Mr. Napier

not to post an advertisement for a vacant teaching position. [Orchard Br. 9:20-10-2]. Both Mr. Napier and Orchard stated in his deposition that there was no explicit instruction to him not to post the position. [Dkt. 104-2, p. 17 (Napier Dep. 65:20-66:3)].

Orchard's Brief in its Summary of the Argument continues to state eleven more times that facts are undisputed, when they are disputed. Orchard's Summary contains no support in the records. The disputes of Orchard's alleged facts are shown by the Brief of Appellant and by the facts and arguments in this Reply Brief. The statements in Orchard's Brief that the facts are undisputed are not truthful statements.

Additionally, after arguing that the facts are undisputed, Orchard's Brief spends most of its arguments at pages 18 to 40 arguing that Dr. Helvie had a mistaken belief as to what Dr. Helvie said and did, which is contrary to the evidence.

However, the facts of what Dr. Helvie said and did are not beliefs, but rather, they are facts. Dr. Helvie knew what she said and did, and she knew what she did not say and did not do. The facts are not matters of belief about subjective facts such as evaluations. The facts about what Dr. Helvie said and did are objective facts, and any issue about them are genuine issues of material fact. Orchard's Brief's arguments about honest beliefs are not applicable to the objective facts of what Dr. Helvie said and did.

Orchard's Brief at page 10:4 is also contrary to the Orchard's previous arguments by alleging that Dr. Helvie instructed Mr. Napier and Mr. Schwartz on

11

what was confidential by using in the Brief the new words "work and rework the job descriptions."

Orchard's Brief repeats at page 21:12-15 its new alleged instructions of Dr. Helvie possibly miscommunicating "the reworking of Ms. Brother's job description." Orchard had not previously claimed that Dr. Helvie instructed "the reworking" of Ms. Brothers' job description, showing again that no specific words were given to Mr. Napier on what was confidential, and that he did not disclose confidential information.

Orchard's Brief at page 33:2 again states Dr. Helvie's instructions regarding "the review and reworking of his direct subordinate's, Ms. Brothers', job description." Before Orchard's Brief, no one had claimed any words of instruction of "work and reworking," again showing that no specific words of instruction were given to Mr. Napier, and he did not disclose any confidential information.

**Orchard failed to follow the legal standards for a motion for summary judgment.**

In her affidavit, Dr. Helvie did not claim any instruction not to post a vacant teaching position. [Dkt. 104-12]. Mr. Napier disputed that there was any instruction not to post a vacant teaching position. [Dkt. 104-2, pp. 16-17 (Napier Dep. 64:12-66:3]. Neither he nor Mr. Eble knew of any such instruction. *Id.* Orchard's Brief lies when it states that it is undisputed that Dr. Helvie gave Mr. Napier an instruction not to post a vacant teaching position. Even Dr. Helvie's affidavit did not testify to that statement. [Dkt. 104-12].

Dr. Helvie stressed Ms. Brothers about her job being in jeopardy by Dr. Helvie's faculty council telling Ms. Brothers that she was not qualified for her job,

by Dr. Helvie not appearing with Ms. Brothers to teach the Winter Term class as Dr. Helvie had promised, by Dr. Helvie not communicating with Ms. Brothers and ghosting Ms. Brothers, and by Dr. Helvie hiring Butler University consultants to interview Ms. Brothers and Ms. Bricker about their coordinator jobs and to make recommendations about their jobs. [Dkt. 104-2, pp. 20-21 (Napier Dep. 77:9-84:18]. Mr. Napier did not stress Ms. Brothers, he worked with her since June 2018 to help her save her job as coordinator with a new job description, and Ms. Brothers wrote a letter to Dr. Helvie requesting to be able to continue to work with Mr. Napier and his assistant, Carole. [*Id.*; A-47].

Ms. Bricker submitted an affidavit stating that she also worked well with Mr. Napier, that Mr. Napier did not stress Ms. Bricker, but that Dr. Helvie stressed Ms. Bricker. [A-78-80].

The failure of the party moving for summary judgment to follow the legal standards for a motion for summary judgment wastes the time and resources of the parties and the courts. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564-65 (7th Cir. 2014). The moving party is discouraged from presenting facts with a "loose allegiance" to the summary judgment standard. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022).

**Dr. Helvie lied about what she told Mr. Napier, lied about him disclosing confidential information, and exaggerated her vague accusations as egregiously compromising her trust.**

Even if Mr. Napier had disclosed any confidential information (which he did not), any little information that was not already known did not merit discharge and was exaggerated by Dr. Helvie. An employer's exaggerated statements are evidence

of a lack of honest belief and evidence of pretext. *Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2012) (plaintiff's statements in private therapy sessions of wanting to kill her supervisor were not serious threats); *Peirick v. Indiana University-Purdue University Indianapolis*, 510 F.3d 681, 693-694 (7th Cir. 2007) (employer's after-the-fact explanations, delay, exaggeration, and unusual conduct was more than enough to create a question of fact concerning the legitimacy of its explanations for termination); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson,* 212 F.3d 976, 979-980 (7th Cir. 2000) (plaintiff doing the nails of coworkers and a visitor, claimed refusal to learn the computer program Excel, and claimed inappropriate attire were pretexts); *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 287-290 (7th Cir. 1999) (employer tried to make a molehill of eating a handful of taco chips into a mountain of theft and "gross misconduct"); see also, *Pennsylvania State Police v. Suders*, 542 U.S. 129, 136 (2004) (plaintiff was harassed by being arrested for theft of her own test results, but she was not charged). Mr. Napier did not breach any confidentiality, but if he did somehow, Dr. Helvie falsely exaggerated it, and there was no honest belief that it justified termination.

**This case also has more evidence than the *Vichio* case.**

This case also has more evidence than the case of *Vichio v. US. Foods, Inc.*, 88 F.4th 687, 692 (7th Cir. 2023), which found sufficient evidence of pretext. A new younger manager gave an older exemplary employee his first negative performance review less than a month after the manager's arrival, and Dr. Helvie gave the exemplary employee, Mr. Napier, and the other male director, Mr. Schwartz, a demotion from the senior team two weeks after she started work. Dr. Helvie

immediately replaced the two males with two female employees who did not supervise any teachers. Dr. Helvie gave no legitimate explanation for the demotion. Dr. Helvie told the two male directors not to report to her, but to report to the male AHOS, and then she did not give information to them or to the male AHOS. She caused the male AHOS and the two male directors to be afraid for their jobs and afraid to ask her questions. [Dkt. 101-2, pp. 6-8 (Napier Dep. 24:2-29:20; Dkt. 101-2, pp. 32-33 (Napier Dep. 128:21-130:9)]. Mr. Schwartz was afraid that his job was in jeopardy because he is a male. [Dkt. 117-1, ¶¶ 191-192]. Orchard's multiple statements of too many males in leadership, statements against the males, termination of the male HOS, Dr. Helvie's background and her actions against the males and favoring females with promotions and information, made the male employees afraid of losing their jobs. Dr. Helvie was the driving force behind concocting generalized negative comments about Mr. Napier, as was done by the manager in *Vichio*. While the manager in *Vichio* created a document trail, Dr. Helvie did not even create a document trail, and instead, gave no warning to Mr. Napier. Dr. Helvie still did not tell Mr. Napier's supervisor any specific facts for the termination of Mr. Napier and he did not know of any specific reason for the termination of his subordinate, similar to the manager's statements in *Vichio*. [A-81-82]. Mr. Eble told Mr. Napier that Mr. Eble was not consulted about Mr. Napier's termination, and Orchard has admitted the fact. [Orchard Brief, p. 6:19-20]. Dr. Helvie terminated Mr. Napier within about nine months of her starting work at Orchard, which is the same time frame that the exemplary employee in *Vichio* was terminated after the new manager began work at the employer. 88 F.4th

689-693. Also, Dr. Helvie replaced the exemplary male director with a female coordinator whom Dr. Helvie had told was going to be demoted to a teaching position, whom Mr. Napier testified was not qualified for the job, and who certainly was not as qualified as Mr. Napier. In addition, Dr. Helvie proceeded to promote and hire all female leaders for the next two years, creating an all-female leadership. [A-77].

Mr. Eble who pulled the application for rehire of Mr. Napier and denied Mr. Napier an interview with Orchard, was under pressure from Orchard who repeatedly said that there were too many male leaders and other statements against males. Mr. Eble was also under pressure from Dr. Helvie who had demoted the two male directors, Dr. Helvie who refused to give him information even about the termination of his subordinate, and Dr. Helvie who made him afraid of being terminated because he was a male. Mr. Napier has more evidence of discrimination than the employee in the *Vichio* case, and Dr. Helvie treated more males worse than just Mr. Napier.

**Orchard's Brief ignores the evidence of retaliation.**

Orchard's numerous statements of too many males in leadership, the actions of Dr. Helvie demoting the two male directors two weeks after she began work, not giving the male directors information, making the male directors afraid for their jobs, terminating the exemplary male director, and replacing him with a female whom Dr. Helvie had told that she planned to demote, all indicated to Mr. Eble, who himself said multiple times that there were too many males in leadership, that Orchard and Dr. Helvie did not want a male to be hired as a director when he

16

pulled Mr. Napier's application from consideration.

Mr. Napier had exemplary past performance. [A-26:17-18]. He had a glowing evaluation by Orchard. [Dkt. 117-6]. Dr. Helvie gave him a high recommendation in February 2019 for a HOS position at another school. [Dkt. 104-2, p. 43 (Napier Dep. 171:1-8]. Dr. Helvie was motivated to cover up her disclosure to Ms. Brothers of her plan to demote Ms. Brothers, causing Ms. Brothers to cry at school, and causing Ms. Brothers to disclose Dr. Helvie's plan to Ms. Bricker, by shifting the blame to the innocent exemplary male, Mr. Napier, in accordance with Orchard's instruction to disfavor the male leaders. [A-45-46].

Dr. Helvie gave his supervisor Mr. Eble no specific reason for terminating Mr. Napier. [A-81-82]. Mr. Napier was more qualified than Ms. Brothers. [Dkt. 104-2, pp. 27-28 (Napier Dep. 107:17-111:6)]. Ms. Brothers had wanted to work for him. [A-47]. Ms. Bricker worked well with him. [A-78-8]. He was supported for director by faculty, parents, and the ISACS report comments. [A-64-76]. Orchard had not investigated Mr. Napier's complaints. An interview was an opportunity for Orchard to conduct a free interview to find the facts.

However, Mr. Napier had complained to his supervisor Mr. Eble about the discrimination against males, and he complained that he was afraid for his job as a male. [Dkt. 104-2, pp. 7-13 (Napier Dep. 25:2-50:2)]. Mr. Napier complained to Orchard about the discrimination. [Dkt. 117-19, p. 3; Dkt. 117-29; Dkt. 117-25, p. 6]. Mr. Napier complained to the EEOC about the discrimination. [Dkt. 117-29]. Mr. Napier complained to the court about the discrimination and the parties first described their evidence in their preliminary lists of witnesses and exhibits on

17

December 27, 2019. [Dkt. 1; Dkt. 20]. Orchard became upset that Mr. Napier declined, or "refused" as Orchard describes it, to help Dr. Helvie craft an email agreeing to his termination, instead of complaining about it. [Orchard's Brief, p. 6:13-15; p. 7:10-11; 24:26].

In spite of all of the facts in favor of an interview and hiring of Mr. Napier, Mr. Eble knew from the statements of Orchard and the actions of Dr. Helvie that Orchard and Dr. Helvie did not want another male leader, especially a male leader who had complained about discrimination.

Dr. Helvie had only told Mr. Eble that she terminated Mr. Napier because "she felt that their relationship was not going to be conducive to the school moving forward." [A-81]. Mr. Eble knew that Orchard had stated multiple times that there were too many male leaders and that Orchard had charged Dr. Helvie to move forward with diversity. [A-3-6; Dkt. 117-14]. Mr. Eble lied about Mr. Napier having prior poor performance, when he did not know of prior poor performance by Mr. Napier. Mr. Eble did not give any specific facts or specific legitimate reason for not allowing Mr. Napier to interview or be rehired when Mr. Napier had all of the support, but Orchard and Dr. Helvie did not want a male leader who had complained about discrimination. Orchard had no policy against retaliation.

Mr. Eble also lied about an unidentified female former employee for whom Orchard had not claimed any information or documents. The lack of documents produced or offered by an employer, which would be particularly in the possession of the employer, can create an inference that the documents do not help the employer. *Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 492-493 (7th Cir.

2008); *Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir. 2007); *EEOC v. Target Corp.*, 460 F.3d 946, 958-959 (7th Cir. 2006). It is evidence of the employer attempting to cover up the evidence.

**Orchard's Brief ignores evidence and inferences favorable to the non-moving party on summary judgment, Mr. Napier, and argues issues of fact and inferences on issues too numerous to respond to in a Reply Brief.**

Many of the issues in Orchard's Brief have been discussed in the discussion of the Statement of the Case, and Orchard's arguments repeat the disputes about the facts of the non-existent instruction not to post a vacant teaching position, the non-existent instruction on confidentiality, the non-existent breach of confidentiality, and sub-issues of facts. Some of the issues not raised in the Statement of the Case are discussed below.

Orchard's Brief implies that its many statements against male leaders were made before Dr. Helvie's arrival, that that fact only makes the evidence of Orchard's bias against males greater, longer, affecting the decisions of Dr. Helvie and Mr. Eble, and causing Orchard's refusal to investigate the complaints of discrimination by Mr. Napier.

Orchard's Brief argues that the fact that its schools were early childhood schools, and not high schools is irrelevant, but not irrelevant. The stereotypes and biases against males in education are stronger in early education. [Dkt. 104-2, pp. 13-14 (Napier Deo. 52L20-56:22)]. Also, Dr. Helvie's overemphasis on women's studies and philosophy of radical feminism in the classroom are less appropriate in early education. [Dkt. 117-32, pp. 1, 4]. What may be appropriate in graduate school, undergraduate school, or even high school may not be appropriate in early

19

education.

Orchard's Brief argues that orchard's debate against Mr. Napier being a male started before Orchard hired Dr. Helvie, which is even greater evidence against Orchard along with Orchard's statements to Dr. Helvie to increase diversity. [Dkt. 117-14].

Orchard's Brief failed to consider its termination of Tom Rosenbluth in the context of its emails to him about too many males, emails about Orchard's knowledge of the illegality of its statements and actions, emails about Orchard's statements against males and favoring females, and Orchard's other actions ending with promoting and hiring all female leaders for two years. [A-3-6; A-77].

Orchard's Brief argues that Orchard's recognition of the illegality of its actions predated Dr. Helvie's tenure, but that is even more evidence of Orchard's knowledge of its illegal actions starting before Dr. Helvie's hiring and continuing thereafter when it hired Ms. Butler to be the coach of Dr. Helvie for Orchard and continued to hire and promote only females for two years. [Dkt. 117-10, pp. 1, 4-6; A-3-6; A-77].

Orchard's Brief fails to consider Dr. Helvie's overemphasis on women's studies, her testimony equating women's studies with feminist studies, and her statements of following the philosophy of a radical feminist in the context of Orchard's many discriminatory statements and actions for years. [Dkt. 104-10, pp. 2-6; Dkt. 117-32, pp. 1, 4]. Orchard's brief relies on the district court's order, which, in turn, relies on evidence outside the record from another college more than 3,000 miles from Dr. Helvie's Us Santa Cruz. [A-20-21]. The order went so far as to

conduct an internet search to find evidence for a "gender" program instead of "women's studies," without giving any notice to the parties. *Id.* The extensive internet search without notice to the parties is evidence of the extreme bias of the order.

Orchard's Brief suggests that the demotion of the two male directors was a "renaming—or perhaps, at most, re-organizing," but there is no such evidence. Dr. Helvie demoted the two male directors of the schools from the senior team, replaced them with two females, and deprived Mr. Napier and Mr. Eble of knowledge of Dr. Helvie's plans. Mr. Napier's lack of knowledge of Dr. Helvie's plans caused his termination. [Orchard's Brief 21:9-15]. Orchard argues that the demotion was not an adverse action, but regardless of whether the demotion was an adverse action, Dr. Helvie's quick demotion of the two male directors of the schools is evidence of the discrimination against Mr. Napier.

Furthermore, the Supreme Court has rejected the argument that an adverse action requires substantial disadvantage. *Muldrow v. City of St. Louis, Missouri*, 144 S.Ct. 967, 974 (2024). Even before *Muldrow,* it was recognized that an action that causes a termination is an adverse action. *Twisdale v. Snow*, 325 F.3d 950, 953 (7th Cir. 2003).

Orchard's Brief admits that Mr. Napier's brief elaborates on these points. The "lack of Dr. Helvie's communication to Mr. Napier" caused the termination of him. [Orchard's Br. 21:9-11]. Orchard's Brief characterizes her "lack" of communication as a "possible" "miscommunication." [Orchard's Br. 21:12-15]. In whatever way that Dr. Helvie's failure to communicate is characterized by Orchard, Dr. Helvie failed to

communicate her plans and instructions to Mr. Napier and to Mr. Eble not to post a vacant teaching position for applications and what she may have later considered to be confidential about a job description. [A-81-82].

Orchard's Brief does not claim that Mr. Napier failed to discuss the facts that Orchard numbered 13 through 35. Instead, Orchard's Brief continues to argue that Mr. Napier had a "different understanding" from Dr. Helvie's failure to communicate instructions to him and to Mr. Eble. Dr. Helvie gave no instructions, but even if she did give an instruction, a misunderstanding of instructions by Mr. Napier would be insufficient to justify his termination, especially after he had exemplary behavior and Orchard failed to follow its policies and failed to do any investigation at all of the multiple complaints.

Orchard's Brief falls back on "Dr. Helvie's belief" of what she said and what Mr. Napier did and the Brief does not rely on what is "correct." What Dr. Helvie said, what Mr. Napier knew, and what Mr. Napier did are issues of fact, not subjective issues of a subjective "honest belief" of performance evaluations. Furthermore, even in cases in which a subjective honest belief of performance evaluations is offered, the more unreasonable the reason is that the employer offers, the more evidence there is that the offered reason is not honest. *Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 492-93 (7th Cir. 2008).

Orchard's Brief argues again at page 22:5-9 that the court of appeals cannot engage in the type of super-personnel department analysis that it has said that it did not do more than twenty-five years ago, citing *Debs v. Ne. Illinois Univ.,* 153 F.3d 390, 396 (7th Cir. 1998).

The recent decisions of the Supreme Court show that the roles of the courts must be more active than their roles were years ago. *Students for Fair Admissions, Inc. v. President and Fellows of Harvard* College, 600 U.S. 181 (2023) (SFFA) (rejecting old high standards for courts comparing qualifications for discrimination)*; Muldrow,* 144 S.Ct. at 975-977 (2024), (rejecting old requirements for a significant change for discrimination)*; Smith v. Spizzirri,* 2024 WL 2193872, _ S.Ct. _ (2024) (rejecting old requirements to dismiss cases like employment cases pending arbitration); *Harrow v. Department of Defense,* 2024 WL 2193874, _ S.Ct. _ (2024) (rejecting dismissal of decade-long employment litigation over a six-day furlough).

Even before those cases within the last year, earlier decisions had changed the way that courts must examine evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003) (the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence); *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760 (7th Cir. 2016) (all evidence must be considered together).

Orchard's Brief states at page 23 that even now, "Mr. Napier does not seem to understand that Dr. Helvie terminated him for poorly managing the entire situation, activating the gossip network, and egregiously compromising her trust." Orchard is correct that even now, its sweeping vague conclusory statements do not state any specific instruction or any specific breach of confidentiality. Orchard's Brief also falsely accuses Mr. Napier of disclosing Dr. Helvie's plan, when it was Dr. Helvie who did so, and falsely accuses him of activating the gossip network, when it was Dr. Helvie who activated the gossip and Dr. Helvie did not give Ms. Brothers any instruction on confidentiality, either.

Orchard's Brief acknowledges that Dr. Helvie and the board did not do any investigation and argues that there was nothing to investigate. An investigation would have shown that there was no instruction about confidentiality and there was no breach of confidentiality.

Orchard's Brief at pages 29:30-31:19 argues that female employees are not similarly situated because they did not commit the offense of betraying the trust of Dr. Helvie. That is not an argument of whether they are similarly situated—it is an argument on the issue of the truth of the vague allegation against Mr. Napier. It is clear that they are similarly situated, and the evidence shows that Mr. Napier did not betray the trust of Dr. Helvie. If Orchard disputes the facts, they are genuine issues of material fact.

Orchard's Brief argues that there were different supervisors at Orchard, but it does not deny that all of the employees were under the supervision of Dr. Helvie and she terminated, promoted, and hired the employees.

Orchard's Brief at pages 30:22-31:12 does not dispute that Ms. Brothers was not qualified for the position of director and was certainly not as qualified as Mr. Napier. [Dkt. 104-2, p. 27-28 (Napier Dep. 105:7-111:6]. Mr. Napier explained the facts of why Ms. Brothers was not qualified for the position of director. *Id.* Orchard's Brief only argues that "it is not as if Ms. Brothers had no qualifications."

Orchard's Brief notes that an unreported decision cited the reported decision of *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) for honest belief, but that decision also involved the belief that multiple lackluster performance reviews were honest, and it did not involve genuine issues of material

fact of what the supervisor told the employee.

Orchard's Brief at page 33 does not argue that Dr. Helvie gave Mr. Napier any specific accusation, and only that she told him, "I've lost confidence in you because you have disclosed to Angie Brothers about her job, which caused her undue stress, and that has also bled over to Gretchen Bricker." Dr. Helvie's words "about her job" is no specific accusation. And, it was certainly not Mr. Napier who told Ms. Brothers that Dr. Helvie decided to demote her to teaching, it was Dr. Helvie who told Ms. Brothers and who caused Ms. Brothers stress and caused her to cry to and to tell Ms. Bricker. It was not Mr. Napier who told either Ms. Brothers or Ms. Bricker, it was Dr. Helvie. Mr. Napier did not even know what Dr. Helvie had decided, and he had been working on an updated job description for Ms. Brothers to keep her as a Coordinator where she wanted to work. [A-47; Dkjt. 117-17, p. 3].

<u>CONCLUSION</u>

For all of the foregoing reasons, the judgment of the District Court should be reversed, and the case should be remanded to the District Court for further proceedings.

Respectfully submitted,

<u>s/ Richard L. Darst</u>
Richard L. Darst

Richard L. Darst
Attorney at Law
Suite 800
8888 Keystone Crossing Blvd.
Indianapolis, Indiana 46240-4636
Tel: 317-573-8888
Fax: 317-574-3855

Circuit Rule 32 Certification

Pursuant to Rule 32(a)(7) and Rule 32(g)(1) of the Federal Rules of Appellate Procedure and Circuit Rule 32(c), the undersigned attorney hereby certifies that the brief complies with the type-volume limitation of Circuit Rule 32(c). The number of words in the brief is 6835. The name and version of the word-processing system employed is Microsoft Word for Microsoft 365.

s/ Richard L. Darst
Richard L. Darst

Certificate of Service

I certify that on May 23, 2024, I electronically filed the foregoing and the appendix with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Richard L. Darst
Richard L. Darst